EXHIBIT 3
NFCU Anti-Bullying Policy

*[Handwritten at top: "I feel He's Bullying me; Per Company Policy I feel these examples of bullying apply to me"]*

**Workplace Bullying**

The credit union defines bullying as "repeated inappropriate behavior, either direct or indirect, whether verbal, physical or otherwise, conducted by one or more persons against another or others, at the place of work and/or in the course of employment. Such behavior violates the credit unions Code of Ethics which clearly states that all employees will be treated with dignity and respect.

The purpose of this policy is to communicate to all employees, including supervisors, managers and executives that the credit union will not <u>in any instance</u> tolerate bullying behavior. Employees found in violation of this policy will be disciplined, up to and including termination.

Bullying may be intentional or unintentional. However, it must be noted that where an allegation of bullying is made, the intention of the alleged bully is irrelevant, and will not be given consideration when meting out discipline. As in sexual harassment, it is the effect of the behavior upon the individual which is important. The credit union considers the following types of behavior examples of bullying:

- **Verbal Bullying:** slandering, ridiculing or maligning a person or his/her family; persistent name calling which is hurtful, insulting or humiliating; using a person as butt of jokes; abusive and offensive remarks.
- **Physical Bullying:** pushing; shoving; kicking; poking; tripping; assault, or threat of physical assault; damage to a person's work area or property
- **Gesture Bullying:** non-verbal threatening gestures, glances which can convey threatening messages
- **Exclusion:** socially or physically excluding or disregarding a person in work-related activities

In addition, the following examples may constitute or contribute to evidence of bullying in the workplace:

- Persistent singling out of one person
- Shouting, raising voice at an individual in public and/or in private
- Using verbal or obscene gestures
- Not allowing the person to speak or express him/herself (i.e., ignoring or interrupting).
- Personal insults and use of offensive nicknames
- Public humiliation in any form
- Constant criticism on matters unrelated or minimally related to the person's job performance or description
- Ignoring/interrupting an individual at meetings
- Public reprimands
- Repeatedly accusing someone of errors which cannot be documented
- Deliberately interfering with mail and other communications
- Spreading rumors and gossip regarding individuals
- Encouraging others to disregard a supervisor's instructions *[handwritten: "Somewhat"]*
- Manipulating the ability of someone to do their work (e.g., overloading, underloading, withholding information, setting meaningless tasks, setting deadlines that cannot be met, giving deliberately ambiguous instructions) *[handwritten: "took supervi respons"]*
- Inflicting menial tasks not in keeping with the normal responsibilities of the job
- Taking credit for another person's ideas
- Refusing reasonable requests for leave in the absence of work-related reasons not to grant leave *[handwritten: "Do not Have any"]*
- Deliberately excluding an individual or isolating them from work-related activities (meetings, etc) *[handwritten: "let me attend some meeting"]*
- Unwanted physical contact, physical abuse or threats of abuse to an individual or an individual's property (defacing or marking up property)

**PERFORMANCE PLANNING & EVALUATION**

**Performance Planning & Evaluation**

The performance program at Neighbors FCU allows you to actively participate in your career development. You and your supervisor have the opportunity to objectively discuss:

22

EXHIBIT 4
Timeline of events that occurred at Neighbors which list the following:
- Write-ups of employees and employee conduct
- Discrimination and harassment by Rick
- Rick creating a hostile work environment
- Reporting the going behavior of Rick and his mistreatment of me to Senior Management
- Reporting the going behavior of Rick and his mistreatment and bullying of me to Human Resources

| DATE | DESCRIPTION |
|---|---|
| 1996 | Begin Employment with NFCU as a Collector |
| 2002 | Promoted to Senior Collector |
| 2010 | Promoted to Collection Manager |
| 2012 | Annual review was all 4 and 5's. Highlights:<br>• Ran Collection department during VP extended leave<br>• Introduced a new product to company called Akcelerent, which I heard about at a conference. Which was later adopted by the company. Akcelerent is a collection platform.<br>• Worked well with team and with Executive leadership<br>• Reduced collections deficiency's |
| 2012 | Introduced a new product to the Credit Union called TLO. TLO is a Skip Product that I was introduced to at a conference. Which was later adopted by the company. |
| 2012 | Introduced Profound to the Credit Union, a product that I heard about at a conference. This is a skip tracing product, with enhanced technology for locating members. Which was later adopted by the company. |
| 2013 | Received an outstanding Performance Review:<br>• Ran the department during VP absence<br>• Team Leader<br>• Team Player |
| 2014 | Promoted to Assistant Vice President |
| 2/2014 | Reviewed conducted by Steve Webb (CEO); Evaluation score: Outstanding<br><br>Previously oversaw the Collections Dept on several occasions (retirement of the VP in 2014, the death of the VP's parents, and when the VP's husband had a heart attack). |
| 5/2014 | Diane Cole, VP of Collections, retired. |

| DATE | DESCRIPTION |
|---|---|
| 5/2014 | I was made the acting VP and ran the Collection Department. My salary did not increase after running the department. However, my white counterpart, now deceased, Jodi Mac stated her salary was adjusted when she stepped in to be as acting VP for the IT Department. She was later promoted to the VP of that department. |
| 2014 | Started training Rick on Credit Union process and procedures which included the following:<br>• Daily Collections Numbers<br>• Collection Reports<br>• Akcelerent navigation<br>• Etc… |
| 8/25/2014 | Steve Webb, (CEO) sending me special projects to complete in Collections. |
| 9/2014 | Rick Jones Hired as VP of Collections |
| 2/2015 | Reviewed conducted by Rick Jones (VP of Collections); Evaluation score: Outstanding |
| 2/5/2016 | Reviewed conducted by Rick Jones (VP of Collections); Evaluation score: Outstanding |
| 5/5/2016 | Letter from Project Manager of Akcelerant from bringing them to NFCU and getting them acclimated. This is just one of the many products that I brought to NFCU by being allowed to attend conferences and seminars on the company's behalf. Rick stopped my participation in 2019. |
| 5/12/2016 | Email from Rick to his boss Greg giving me kudos; told Rick that in case of phone outage we should get space cell phones so Collection team can keep working. |
| 2/2017 | Reviewed conducted by Rick Jones (VP of Collections); Evaluation score: Outstanding |
| 2017 | Mid-Year Reviews stopped. Rick never gave me a Mid-Year review. I did not know how he thought I was doing until the Annual Review as he gave NO feedback on my job performance throughout the year. |
| 5/18/2017 | Certified by CUNA as Certified Credit Union Financial Counselor. Continued to educate myself to better serve the Credit Union members and the company. |
| 5/28/2017 | Rick sent me an email to start watching Adrianne's accounts. |

| DATE | DESCRIPTION |
|---|---|
| 6/2/2017 | Shineeko Stewart, Collector, became hostile in a meeting with me and Rick regarding her Correction Action Plan. Reported to HR. |
| 6/30/2017 | Lydia Gooden, Sr. Collector, refused to do work that was given to her. Reported to HR. |
| 9/1/2017 | Rick and I met with Adrianne Chase to discuss why Ricked lowered Kathy Schexnayder goals allowing her to be Top Performer in her tier. Conversation w/Rick and Adrianne became heated. Adrianne later told me if not resolved she would take this to HR. When I informed Rick he changed tier so that both Adrianne & Kathy would make their goals and receive financial incentives. |
| 9/2017 | In the Switch-On meeting, I passed out a handout "Code of Conduct"; a manager later reported that when asking Lydia Gooden to see her handout she stated she had thrown it in the trash. |
| 10/18/2017 | Jackie Jones, Collector, came to my office stating that Rick told her to change my score. Rick stated he did not. Management inconsistency. Making employees believe I don't want them to receive fair treatment or higher scores when reviews are done with both me and Rick. |
| 10/19/2017 | Sent email to Rick listing inconsistencies in the workplace; also provided Dan Robichaux a copy in 2/2018. |
| 1/11/2018 | Informed Lydia Gooden, to be on time for mandatory meetings. |
| 1/11/2018 | Wrote up Lydia Gooden for being insubordinate. |
| 1/22/2018 | Met with Rick to discuss Adrianne Chase behavior in the office. |
| 1/27/2018 | Informed Rick that Adrianne was not calling on her accounts as instructed. |
| 1/2018 | A group of Collection Employees got together, in Atalia's office, to do a review on me which is what Rick is stating he used to lower my scores.<br>Document: Supervisor Assessment<br>The following team members participated:<br>• Atalia<br>• Lydia<br>• Nicole<br>• Jackie<br>• Adrianne<br>• Rob Simon<br>• Audrey |

| DATE | DESCRIPTION |
|---|---|
| | NOTE: Several other employees informed me they did not want to be a part of the conversation. |
| 2/2018 | Rick sent me an email to meet him at the NFCU Plaza and did not indicate why. |
| 2/2018 | 2017 Annual Review conducted with Rick and HR.<br>• Rick lowered my scores for the first time and put N/A as the reason. Provided no justification.<br>• I submitted a rebuttal of my review and Rick never responded.<br>• HR had never participated in my Annual Review prior to Rick. He told me to attend a meeting at the Plaza, when I showed up I was greeted by him and a representative from HR team (Dawanda Carter). I was surprised when HR showed up to do my review.<br>• Met with Dan Robichaux, over HR, immediately after review, as Greg Inman was out of office (Rick's boss). |
| 2/2018 | Informed HR that Rick lowered my Performance Review score and **only stated N/A with no justification.**<br>• Rick rated me a 2 for most of the items but the description never state why only N/A.<br>• Rick told me to do things way and follow his management style. I was already an effective leader in the company and had been recognized on numerous occasions for my hard work and dedication and leadership ability.<br>• Rick gave me a list of his expectations during the meeting but this information was never provided to me before so why would I be rated on this for the previous year. |
| 2/2018 | HR (Yolanda and Candace) informed me they notified Rick to answer my rebuttal 2017 review<br>• HR or Greg Inman both unable to get Rick to respond to my rebuttal or provide justification for lowing my score. He only put N/A. |
| 2018 | Rick stopped all travel and from me attending any conferences, training, or seminars in 2018. |
| 2018 | Shineeko and Brittany informed me that Rick called several of the employees into his office and ask the |

| DATE | DESCRIPTION |
|---|---|
|  | question: How do I provoke them?". Per Valerie Pierre and Leslie, Rick brought several employees into his office but they were not included. |
| 2018 | First time taking FMLA due to work related stress. Submitted paperwork to Candace in HR for FMLA due to health reason.<br>• As of 2017 I had over 700 sick hours with NFCU ( I always working and was a dedicated employee)<br>• Feb. 2018 after being blind sided with an annual review, shocked with lies from Rick Jones, I thought I was having a stroke my health started deteriorating because everything I had worked so hard for over 20 some years started to take a turn for the worse.<br>• 2nd FMLA  February 2018 Dr. Tyrone Girod 225-292-6661 |
| 2018 | I have received over 12 awards at the Credit Union, in multiple roles and also as AVP for my dedication and hard work,  In 2018, Rick informed me that he didn't think he nor I should receive awards, at the end of the year, anymore because he felt like it was just about the employees not us.  I asked him even if I worked hard & led the team for our delinquent numbers each month/year to be under 1%? He stated yes, because he knows I'm doing a good job do no need to receive an award. |
| 2/5/2018 | Rick discontinues Switch-On morning meetings<br>• I ran these daily meetings in my office for the Collections staff.<br>• Meetings were to boost morale and provide team information<br>• This meeting has been held in the department for over 10+ years.<br>• Lydia Gooden did things to be distracting e.g. humming<br>• Adrianne Chase would stand in doorway and not sit down. |
| 3/2018 | Informed Yolanda Whitmore, VP of HR, about inconsistencies in the department and my mistreatment. |
| 3/7/2018 | Meet with Greg Inman (COO), for over an hour, to discuss review and mistreatment by Rick. |

| DATE | DESCRIPTION |
|---|---|
| 3/7/2018 | Sent email to HR regarding document Rick provided to me in my annual review meeting listing his expectations.<br>• Statements in document NOT listed in my annual review document on HR Performance Pro.<br>• Rick's document handed to me during annual review. |
| 3/13/2018 | Meet with Greg Inman and Rick Jones. Greg had to force Rick to tell me why he lowered by scores. Rick acknowledged that the reason he lowered by scores was due to employee comments on their evaluations of me. |
| 4/9/2018 | Asked Rick if I could attend Career milestones which is something I have attended in the past. Rick said only for VP's, I can only attend in his absence. Found this NOT to be true.<br>• I received invites from the CEO's executive assistants.<br>• Other AVP's from other departments attended the meeting as I was friends with other AVP's in the company. |
| 4/19/2018 | Member contacted me to complain about not receiving callback from Rick Jones after waiting 3 weeks to get issue resolved. Voice recording. |
| 6/4/2018 | HR asked me to sign review stating the Annual review was conducted.<br>➢ Submitted a rebuttal to HR<br>➢ Rick never responded to rebuttal<br>➢ HR did not make Rick respond to rebuttal. HR said they informed his boss Greg Inman and HR stated they could not make him respond.<br>➢ After 100 days, with no response from Rick, and numerous emails from HR, I signed the review as HR said I had to so they could close it out. |
| 6/13/2018 | Greg Inman (Rick's Boss), followed up with me to check on the progress with me and Rick for the bi-weekly meetings. I emailed Greg, to let him know that Rick and I started to have bi-weekly meetings but items from the Performance Review were not being discussed or any areas of improvement needed. I wanted to ensure my numbers improved on the next review and that Rick would discuss any |

| DATE | DESCRIPTION |
|---|---|
|  | areas he thought I needed to work on. This never happened as he only discussed the numbers and daily work in the department. |
| 6/18/2018 | Greg replied back to my 6/13/18 email and asked if I wanted him to speak to Rick regarding our bi-weekly meetings and their purpose or did he want me to talk to Rick. |
| 6/19/2018 | I replied to Greg asking that he speak with Rick. I did not want to wait another year and get blindsided in a review so wanted me and Rick to have a good dialog about expectations. I never heard back from Greg about their meeting or if he even met with Rick. |
| 7/17/2018 | Rick and I had meeting with LaShika O'Neal (former employee) and Shineeko Stewart. Conversation became very heated where LaShika accused Shineeko of being a bully. |
| 7/23/2018 | Bi-Weekly meeting with Rick<br>• Asked that he back me up so we can be a united front with the team.<br>• Rick stated he will continue to have close door meetings with staff that I will not be apart of.<br>• When he is out of office not informed on what open items need resolution. |
| 8/23/2018 | Rick removed my access from ADP/PerformancePro portal. This portal houses employee information which I used frequently. HR had to of known as they were the administrators of ADP (Timecards, Resumes, and Employee Reviews). When asked about my access Rick lied and said he didn't know. When I asked HR personnel Dawanda Carter and Candace Martin they didn't know why I wasn't able to see anything anymore-knowing HR removed my access. |
| 9/8/2018 | Evaluation of Rick<br>• Communication issues with Rick<br>• Not cohesive team<br>• Never replied to your rebuttal of annual review |
| 10/2018 | Attended Volunteer program with team members. |
| 10/9/2018 | Submitted pictures from Volunteer Event to Preston, in Marketing, to review, approve, and post. |
| 10/9/2018 | Sent email to team from Volunteer event, to review and included the pictures that were sent to |

| DATE | DESCRIPTION |
|---|---|
|  | Marketing. No response or feedback was submitted to me. |
| 10/2018 | Received call from Yolanda in HR regarding of complaint on pictures from Volunteer event. Adrianne, one of my employees, contacted HR directly and not me. |
| 10/2018 | Issue resolved with HR. No action taken as procedures and process followed. HR stated I did not need to apologize when I offered to. Yolanda Whitmore state that an apology was not needed. |
| 2019 | Rick stopped all travel and from me attending any conferences, training, or seminars in 2019. |
| 2019 | Rick continued to divide the team:<br>• Called some team members into his office to ask them what they didn't like about me<br>• If I gave the team a directive they would to go ask Rick if he want them to follow my instructions and he would change it. I follow company policies and procedures. |
| 2019 | HR sent out email informing Managers that if they lowered an Employee score in a Performance Review they must specify |
| 2019 | In the Organizational chart, Rick listed my position along with the Collectors instead of showing the correct hierarchy.<br>• I asked Rick for the Department Organization chart in the later part of the year. He walked in my office and handed this to me.<br>• This chart does NOT resemble the one from 2018 where I was listed under the VP and not with the Collectors.<br>• I asked him did he compose this chart he said no he got it from HR; when I said I was going to ask HR he then said it got it off the Intranet.<br>• Laura Wolfe, my outside coach, was sent an Org Chart but not the one Rick gave me.<br>• Rick made this chart, as it does not looked like an NFCU document, and gave it to me to let me know what he thought of my roll. This is bullying. He took the time to make this just for me as it took him 2 days to give it to me when I asked for it. |
| 1/18/2019 | Employee insubordination: |

| DATE | DESCRIPTION |
|------|-------------|
|  | • Shineeko and I went into Rick's office to discuss her inappropriate behavior. I logged an incident with HR.<br>• I was asked to leave Rick's office when an employee Jennifer, came up behind me in a threatening movement, and was not reprimanded for talking to me unprofessionally. No apology given to me at that time. I logged an incident with HR. |
| 1/28/2019 | Employee insubordination:<br>• After department meeting Shineeko ignored me several times on Collection floor. We went into Rick's office to discuss her inappropriate behavior. Rick said he would write up incident. |
| 2/2019 | 3rd FMLA February 2019 to March 2020 Dr. Tyrone Girod & Sharolyn Arrington 225-292-6661<br><br>The Doctor recommended that I see Dr. Pat Appleton, a Physiatrist to discuss the treatment I was having in the work place.<br><br>FMLA 2019- 2020 Dr. Dariusz Gawronski at The NeuroMedical Center Clinic<br>225-769-2200 |
| 2/19/19 | Received email from Candace Martin stating that HR wanted to meet with me regarding my review. I sent an email to HR on 2/13 stating that Rick was dividing the team and my team is displaying inappropriate behavior towards me. I believe and uphold in company Core values and enforce those values. I met with HR and nothing was done. HR met with Jennifer and Shineeko but the findings was not shared with me or resolved. To my knowledge other team members that witnessed Shineeko's actions were questioned. |
| 3/1/2019 | Sent HR my rebuttal for Feb review have not received any feedback. |
| 3/27/19 | Coaching agreement signed with Dr. Laura Wolfe. I requested a coach from an outside source to help me deal with Rick and office environment as it was impacting my health and I already have a disability. HR and Greg Inman allowed Rick to lower my |

| DATE | DESCRIPTION |
|---|---|
|  | scores, in my Annual Performance review, and NOT provide any justification.<br><br>NOTE: Human Resource has now put a policy in place where a manager MUST state a reason as to why a score decreased. When I asked Candice Martin and Yolanda in HR why Rick had not responded to my rebuttal; HR stated that Greg Inman was informed to get Rick to respond but HR stated they could not make him. How can a manager not be made accountable for changing for lowering a score without any justification? |
| 3/28/2019 | Emailed Greg Inman, Rick's Boss, update and he provided approval to continue seeing Dr. Laura Wolfe weekly for coaching. When I met with Laura, she state that Rick emailed her and that he was only approving me to see her every other week. Rick only told this to Laura, not me or Greg, which is his boss. |
| 4/1/2019 | Diagnosed with Shingles and Panic Attacks, Sleep Deprived. As my work environment became more hostile this impacted by health. |
| 6/24/2019 | During our bi-weekly meeting, Rick informed me that only he would be interviewing for the new AVP (Assistant Vice President) position and that he and I would conduct training. I would be excluded from interviewing, which is a job duty I previously would conduct and/or participate in. I told him that I thought I would be involved in the hiring process. He informed me with 'No, you will not", in a combative tone. |
| 6/26/2019 | Rick informed me that Atalia Williams had accepted the position of AVP.   NOTE: I hired Atalia, and she had no Management experience. |
| 7/1/2019 | Rick was only tracking my FMLA hours.<br>• 4 other people were on FMLA (Jackie, Val, Shineeko, and Audrey) in our department<br>• Rick messaged me at home at 7am, about my time off, when I don't even report to work until 8:30am. I was also on FMLA under heavy medication during this time. This can be done when I return to work. If he is not in the office then HR can also input my time. |

| DATE | DESCRIPTION |
|---|---|
| 7/2/2019 | Shineeko was not following company policies and procedures and was being rude to a member. Rick would not let me write her up, which is only of my core job duties to enforce company policies and implement corrective actions. This was ongoing as a lot of her complaints came from other departments and the CEO's assistant Amy. |
| 7/2/2019 | Contacted by Rick to report my FMLA while out of the office on FMLA. Sent request to HR as normally when someone is out of the office they are not contacted while under a Doctor's care. |
| 7/10/2019 | Rick announced that Delvin Shallow would replace Atalia (Legal Accounts Specialist). Rick did not inform me of the interview (list of interviewees and times/dates of interviews). Delvin was reporting directly to me and after the promotion would report to Atalia. |
| 7/19/2019 | Rick announced that Jackie Jones will replace Delvin (Senior Collector). I was not involved in the interviews (list of interviewees and times/dates of interviews). This position reports directly to me. |
| 8/2/2019 | Rick excluded me from the conversation to discuss one of my key tasks during a meeting on Collection Numbers. I sat in a meeting with Rick and Nicole Duhon at 12:06pm regarding the daily Collection numbers (this is a desk duty that I have been completing for years; it is included on my job description). During the conversation, Rick was talking directly to Nicole and his body language was directed to her. This was done during the majority of the meeting. |
| 8/2/2019 | Filed claim with EEOC for Discrimination against NFCU. EEOC Charge No.: 461-2019-02360 |
| 9/30/2019 | After EEOC claim, a new employee, Lolitha Payton, was hired that would report directly to me and I was not engaged, consulted, or aware of her presence until Rick introduced us and told me to train her. |
| 10/6/2019 | Rick sent me an email to train Atalia on the Daily Delinquency Report; which was one of my primary duties. |
| 11/8/2019 | Rick requested that I train Atalia on doing Incentives/Bonuses for the Dept. which was one of my primary job duties |

| DATE | DESCRIPTION |
|---|---|
| 12/9/2019 | Rick requested I do an in-depth training with Atalia to cover Extention Processing. This was one of my core job duties. |
| 2020 | Based on NFCU Handbook some of the actions that Rick had taken against me is considered bullying. |
| 2020 | Rick started to lessen my core AVP job duties after my EEOC filing. NOTE: Rick never had a conversation with me on removing any of my job duties or access to certain systems.<br>• He became more aggressive with me<br>• His tone and demeanor drastically changed<br>• He would not allow my suggestions, opinions, or ideas to be heard. He would look to Atalia and begin to engage her more. |
| 2020 | Rick gave Atalia my job duties for generating reports for department incentives/bonus for the team. |
| 2020 | Rick want me to train Atalia on all my job duties after my EEOC claim.<br>• Initially, my job duties and Atalia's were different as she was suppose to oversee the Collections Specialists (Repo, Bankruptcy, Attorney, and Recovery Specialists), and I oversaw the Front End, Backend, and Indirect Collectors.<br>• Prior to Atalia's promotion the Collection Specialist team reported directly to me, in which the team was ran efficiently. |
| 2020 | Rick stopped me from doing performance reviews of employees.<br>• I had the daily interactions with the team as Rick was always in meetings.<br>• I was not consulted or provided any input into the Performance reviews for my team so how were there to be rated. Prior to the EEOC claim I provided input and feedback on my employees for their review and that's how he would grade them accordingly.<br>• I assigned and monitored the work of the team. None of my data or information was requested on how an employee formed. So how were they scored in their review? |
| 2020 | Rick stopped me from writing up employees for violating company policies. The last write-up I performed was per instruction by HR. |

| DATE | DESCRIPTION |
|---|---|
| 2020 | Rick stopped me from receiving/participating in departmental awards and acknowledgements |
| 2020 | Rick excluded me from many managerial decisions within the department. However, when he is out of the office, I am the point of contact and the staff comes to me for decisions. Unfortunately, I am not made aware of any changes that may have occurred and cannot provide the staff with informed responses. |
| 2020-2021 | NFCU is still currently hiring in other departments and other areas. |
| 1/6/2020 | EEOC investigated my complaint and was not able to determine an outcome. Dismissal. EEOC Charge No.: 461-2019-02360 |
| 1/23/2020 | Rick advised me that I could no longer come in on Saturdays if I want to catch up on my work.<br>• I'm a salaried employee so could not understand what difference it would make if I came into the office on the weekend.<br>• Rick stated this was a HR policy yet this HR policy was not sent out company wide.<br>• Other AVP's, in the company, still worked on the weekends at the credit union. So it appeared I was targeted. |
| 2/20/2020 | Candace sent out email to Rick; Please be advised that Sandra Thymes has been approved for up to 12 weeks intermittent FMLA leave between February 1, 2020 and January 31, 2021; Please do not count occurrences during this time. |
| 3/24/2020 | Rick instructed me to work from home. Only him and Atalia would remain in the office.<br>• He told me NOT to email my team that I would be working from home that he would do it. To my knowledge no email was sent out to the team on that day.<br>• Rick told me to get my things and leave and report to IT the next day for a laptop. He had a very aggressive tone.<br>• After working from home he hardly contacted me or responded to my calls and emails<br>• Rick had Atalia to start taking over my job duties |

| DATE | DESCRIPTION |
|---|---|
| | • Rick told me to contact members on the phone and to work the queues along with the collectors. |
| 3/2020 | 4th FMLA March 2020 to March 2021<br>• Dr. Tyrone Girod & Sharolyn Arrington 225-292-6661 |
| 4/1/2020 | During COVID I was working from home; I would call or email Rick and/or Atalia for information or questions and they would not respond. I would have to contact the employees (Jackie, Kayla, Nicole and whomever else I could reach) to track them down. Minimal contact with Rick while working from home. As Atalia begin taking over some of my job duties she would email me to review and approve. |
| 6/10/2020 | HR send me an email to report to office on 6/11/20. |
| 6/11/2020 | Rick and HR VP gave me notice. NOTE: No offers to help me find work within company, go part-time, etc..<br>Three people from the Collections department were let go:<br>• Lolitha Payton was the last hired in the Collections Department on 9/30/19.<br>• Shantonal Johnson was currently on Probation for violating confidentiality and personal conduct statement, use of communication systems, and code of conduct.<br>• Myself – The only manager let go, with a history of dedicated services of over 20 years the company which would have been 25 as of February 2021. Which leads me to believe it was related to me filing an EEOC claim in 2019. |
| EEOC provided | NFCU offered Doris a part-time job which I believe was done so she could complete her retirement.<br>• Doris is a white female that was close to retirement<br>• I would have had 25 years with the company as of February 2021.<br>• Some employees, were placed in other jobs within the company soon after the layoff or before the layoff. I wasn't given that option as my performance was never an issue. |

| DATE | DESCRIPTION |
| --- | --- |
| 7/1/2020 | Applied for Collection Manager position – Essential Federal Credit Union -Received response on 7/30/20 stating they decided to promote within per Karesa Pierre VP Human Resources. I had two interviews and took test with them. They called me back and said they were interested. |
| 8/4/2020 | Applied for Collection Manager position -La Capitol Federal Credit Union -Received response on 9/25/20 stating they have made a hire for this position per Casey A. McCoun HR Assistant 225-342-5055. |
| 9/11/2020 | Applied for a position on 9/11/20, Pelican State Credit Union. Sent in resume {due to an associate request} per Chloe' Benoit Recruiting & Employee Engagement Rep. called me to discuss what my interest with the organization. After discussion she sent me a link to take a test on 9/15. I have sent emails and left several messages requesting a status and Chloe never contacted me. |
| 9/22/2020 | Applied for Collector position -Campus Federal Credit Union – Received automatic response from Talent Acquisition Team from Campus Federal stating thank you for applying. No other response. |
| 11/3/2020 | Filed 2nd EEOC claim – Retaliation and Age Discrimination. EEOC#: **461-2020-02171** |
| 1/14/2021 | Applied for Collection Manager with Baton Rouge Telco Federal Credit Union. Had telephone interview with Kristin Parker Senior Human Resource Generalist 1/19/21 after phone interview Kristin called me back several hours later requesting I sign a release for background check and a few hours after that she sent a link for a zoom interview with the COO/Collection Manager (Steven Denny) which took place on 1/22/21 he stated he will be calling Rick Jones {my old supervisor} I have contacted them several times via email and have yet to hear back. |
| 2/10/2021 | Contacted Yolanda, the VP of HR, to ask if any referral requests has come to HR. She stated no one has contacted the HR to do a referral. As some of the Interviewers know Rick personally, I'm assuming Rick is being contacted. |
| 2/24/2021 | Applied for Accounts Control Collector at La Capital Federal Credit Union. Received email from Lydia Thom Director of Human Resource #225- |

| DATE | DESCRIPTION |
|---|---|
|  | 424-5495 to interview today at 2:30pm. She stated she would contact my boss for a reference and I would hear back from her in 1 or 2 weeks. I followed up with Lydia for a status and never heard back. |